**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| JEFFREY ROBERT MONROE,<br><br>  Petitioner,<br><br>  vs.<br><br>JAMES A. YATES,<br><br>  Respondent. | Civil No.   1:08cv623 JLS (WMC)<br><br>**ORDER: (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; and (2) GRANTING IN PART AND DENYING IN PART CERTIFICATE OF APPEALABILITY** |

**I.   INTRODUCTION**

Jeffrey Robert Monroe, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for first degree burglary [doc. no. 1]. Monroe contends: (1) his due process right to speedy trial was violated; (2) the trial court improperly denied admission of third-party culpability evidence; (3) his prior out of state burglary should not have been counted as a strike; and (4) he was denied effective assistance of trial counsel. Respondent contends Monroe's claims lack merit. This Court has reviewed the Petition (Pet.), Respondent's Answer ("Respt.'s Mem."), the Traverse, and all supporting documents. After a thorough review of the record, the Court finds Monroe is not entitled to the relief requested and orders that the Petition be **DENIED**.

///

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. 28 U.S.C. § 2254(e)(1) (2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The facts as found by the Court of Appeal are as follows:

> On October 13, 2000, alerted by a neighbor that the doors of a mobile home in Kern County were open, the mobile home owner and a sheriff's deputy found bootprints on the ground and a bootprint on an open door someone had kicked in. Missing from the mobile home was a .380 semiautomatic. Four days later, Jeffrey Robert Monroe discarded the .380 semiautomatic while fleeing from a Los Angeles carjacking, but sheriff's deputies recovered the weapon and arrested him for carjacking and possession of stolen property. Fingerprints from inside the mobile home matched his.

(Lodgment No. 4 at 2.)

## III.    PROCEDURAL BACKGROUND

On October 31, 2002, a Kern County jury convicted Monroe of first degree burglary in violation of California Penal Code section 460(a). (Lodgment No. 14 at 237.) At a bifurcated trial, the jury found true 10 Pennsylvania prior burglary convictions. (Lodgment No. 18 at 468-70.) The sentencing court found three of those convictions qualified as both serious felony priors and strike priors. (Lodgment No. 21 at 6-7.) The Court sentenced Monroe to 40 years to life, consisting of 25 years to life for first degree burglary consecutive to five years for each serious felony prior, to be served consecutively to the 14-year sentence on the Los Angeles carjacking. (*Id*. at 9.)

On appeal, the California Court of Appeal ordered two of the serious felony priors and two of the strike priors be stricken from the judgment. (Lodgment No. 4. at 9.) The case was remanded to effectuate the order. (*Id*.) Monroe's Petition for Review was denied. (Lodgment No. 6.)

On January 20, 2005, the superior court resentenced Monroe to 31 years in prison, consisting of 17 years in prison on the Kern County burglary (double the six-year upper term on the burglary conviction, plus five years for the prior felony), and a consecutive 14-year term for the Los Angeles County carjacking. (Lodgment No. 22 at 29.)

Following a second appeal, the Court of Appeal remanded for resentencing based on the state's concession to Monroe's claims that the Kern and Los Angeles County convictions should have been

aggregated and that his total custody hours had not been calculated and entered into the abstract of judgment. (Lodgment No. 10 at 8.)  Monroe's Petition for Review was denied. (Lodgment No. 12.)

On October 11, 2006, the superior court sentenced Monroe on the burglary to an upper term of six years which was doubled pursuant to the three strikes law, and on the carjacking to a subordinate term of one year and eight months which was also doubled pursuant to the three strikes law. (Lodgment No. 25 at 35-37.)  The court further imposed consecutive terms of one year four months for a gun use enhancement and five years for a prior serious felony conviction enhancement. (*Id.*) Monroe's total sentence became 21 years, eight months and a grant of 2,205 days in custody credits. (*Id.*)

Following a third appeal, on January 28, 2008, the Court of Appeal remanded for correction of clerical errors in the abstract of judgment to show a total of a 22-year prison term. (Lodgment No. 13 at 6.)  Monroe did not file a Petition for Review.

On May 5, 2008, Monroe filed the current Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of California [doc. no. 1].  Respondent filed an Answer on September 2, 2008 [doc.no. 16].  On October 1, 2008, Monroe filed a Traverse [doc.no. 20].

On November 25, 2008, this case was reassigned to the Honorable Janis L. Sammartino, District Judge of the United States District Court for the Southern District of California [doc. no. 22].

**IV.   SCOPE OF REVIEW**

This Petition is governed by Title 28, United States Code, § 2254, as amended by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA").  Section 2254(a) sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in *violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a) (2006) (emphasis added). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2006) (emphasis added).

"AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F. 3d 998, 1001 (9th Cir. 2007) quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). To obtain federal habeas relief, Ramirez must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

## V. **SPEEDY TRIAL**

The burglary complaint in this case was filed against Monroe on December 19, 2000. (Lodgment No. 14 at 2.) Monroe was not informed about the government's intent to prosecute him for

burglary until the Kern County District Attorney's Office filed a hold against him on February 20, 2002. (Lodgment No. 18, vol. 2 at 185.) Monroe was incarcerated in Los Angeles County for the carjacking conviction during this time. He claims the prosecutorial delay in bringing him to trial was a denial of his constitutional rights to speedy trial and due process, and prejudiced his ability to present evidence. (Pet. at 5.) In particular, he claims he would have prevented the destruction of his boots, a key piece of exculpatory evidence, upon incarceration in Los Angeles County. (Pet. at 5; Traverse at 7-15.)

The last reasoned state court decision on this claim was issued by the Court of Appeal in Monroe's first appeal. (Lodgement No. 4 at 2-5.); *Ylst*, 501 U.S. at 801-06 (where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision). The Court of Appeal assumed, for "judicial efficiency" that the delay in bringing Monroe to trial was a violation of his constitutional right to speedy trial, and then proceeded to weigh any prejudicial effect from the delay against any justification for the delay. The Court of Appeal stated the following:

> Monroe argues his boots "would not have matched the prints at the burglary scene" but cites to no evidence in the record that supports his argument. . . . Monroe mistakes polemic for proof. His argument about the boots is speculative. The record intimates the charged burglary was in limbo while the investigating officer was on military leave. Together with that distraction, Monroe's custody on the Los Angeles carjacking apparently diverted law enforcement's finite resources to other cases, presumably ones with investigating officers at work and with suspects at large or in local custody. Even so, a simple inquiry from the mobile home owner about the recovery of his .380 semiautomatic quickly roused the district attorney's office to initiate a hold, the removal order, the arraignment, the negotiated settlement, and, after the demise of the negotiated settlement, the preliminary hearing and the information--all within a period of just four months.
>
> [] Here, . . . the record shows mere inadvertence by the prosecution. Courts weigh that kind of delay less heavily against the prosecution than intentional delay calculated to hamper the defense. [] "There's prejudice . . . any time there's a delay, as a practical matter, although not necessarily as a legal matter," the [trial] court noted, "because any time there's a delay, there's bound to be some dimming of memories and that sort of thing." The [trial] court found the dimming of memories "really minuscule."
>
> Though hardly laudable, the delay in prosecuting Monroe was neither purposeful nor reproachable but instead--in an era when the exigencies of foreign wars and the shortcomings of state funding inexorably disrupt the normal operations of local government--quite

understandable. With fingerprint evidence and the .380 automatic implicating him in the charged burglary, the prejudice of the delay was so inconsequential that he suffered no violation of his federal or state constitutional rights to due process or speedy trial.

(Lodgment No. 4 at 4-5.)

"The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy the right to a speedy trial." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (internal citation omitted); *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993). This right is "fundamental" and imposed by the Due Process Clause of the Fourteenth Amendment on the States. *Klopfer v. North Carolina,* 386 U.S. 213, 222-23 (1967). The Court must assess four factors in determining whether the constitutional right to speedy trial has been violated: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant asserted the right; and 4) whether the defendant suffered prejudice as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Consideration of these factors includes the application of a balancing test whereby the conduct of both the prosecution and the defendant is weighed. *Id.* The length of delay is a triggering mechanism; unless it is presumptively prejudicial, there is no need to inquire into the other factors. *Doggett*, 505 U.S. at 651-52; *Barker*, 407 U.S. at 530; *see also Beamon*, 992 F.2d at 1012.

The Kern County district attorney's office filed a complaint against Monroe for burglary on December 19, 2000. (Lodgment No. 14 at 2.) Trial did not begin until 20 months later on October 28, 2002, following failed settlement negotiations. (Lodgment No. 18, vol. 1 at 2.) However, Monroe's speedy trial challenge, and the parties' stipulation at trial, focuses on the 14-month delay between the filing of the complaint and the filing of the hold on Monroe on February 20, 2002, during which time the district attorney's office did nothing on Monroe's case. (Lodgment No. 20 at 12.) Any delay of over 13 months in bringing a defendant to trial is presumptively prejudicial. *See United States v. Murillo*, 288 F.3d 1126, 1132 (9th Cir. 2002) (13-month delay between arrest and trial is presumptively prejudicial and triggers *Barker* inquiry); *see also United States v. Lam*, 251 F.3d 852, 856 (9th Cir. 2001) (14-and-a-half-month delay presumptively prejudicial).[1] Additionally, the length of delay is "actually a double inquiry;" if petitioner makes a showing of "presumptive prejudice" a court must

---

[1] Respondent argues that *Murillo* and *Lam* are not controlling because under AEDPA it is United States Supreme Court authority which controls and that Court has not clearly stated a delay of 14 months is presumptively prejudicial. (Resp.t's Mem. at 12-13.) This Court is bound by Ninth Circuit precedent and rejects Respondent's argument.

then consider, as one factor among several, the extent to which the delay stretched beyond the threshold of "ordinary," triggering judicial scrutiny. *See Doggett*, 505 U.S. at 652-53 "Depending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.* at 652, fn 1. Within the Ninth Circuit, a sixth-month delay involving a firearms possession charge has been considered a "borderline case." *Lam*, 251 F.3d at 856 (9th Cir. 2001). However, if the charges are complicated and serious, requiring considerable scrutiny of physical and circumstantial evidence, substantial cross-examination of expert witnesses, and potentially the death penalty, a 14-and-a-half-month delay will not be considered as greatly exceeding the threshold needed to trigger judicial examination. *Id.* Although Monroe's case required some scrutiny, collection and examination of physical evidence, and did involve cross-examination of fingerprint experts, it certainly was not as serious as a case involving the death penalty. Based on previous caselaw it is safe to say the 14-month delay in this case exceeded the minimum required to trigger judicial scrutiny by somewhere between four to 10 months . The weight to be attached to this is dependent on the Court's examination of the other *Barker* factors. *Doggett*, 505 U.S. at 651-52.

Under the third *Barker* factor, the Court notes that Monroe could only have asserted his speedy trial rights after the hold from Kern County was filed against him on February 20, 2002, alerting him of the intent to prosecute. (*See* Lodgment No. 18, vol. 2 at 185.) Thus, the Court places more focus on assessing the second and fourth Barker factors; the reason for the delay and whether Monroe suffered any actual prejudice as a result of the delay. Generally, if prosecutorial delay is "excessive" and the reasons for the delay weigh heavily against the government, the requirement for proof of actual prejudice diminishes and the presumption of prejudice intensifies. *Doggett*, 505 U.S. at 652 and 657. Different weights are assigned to different reasons for delay. *Id*. at 657; *Barker*, 407 U.S. at 531. A deliberate attempt to delay the trial in order to hamper the defense is weighed heavily against the government. *Barker*, 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts should be weighed less heavily. . .." *Barker,* 407 U.S. at 531. However, even when the delay is negligent, and not deliberate, if the period of delay is "excessive" or "extraordinary" affirmative proof of prejudice is not essential. *See Doggett*, 505 U.S. at 655-56. "[T]oleration of [] negligence varies inversely with its protractedness" and to "warrant granting relief, negligence unaccompanied by

particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Id.* at 657. "Excessive delay" due to the government's negligence has been held to be five and eight and half years. *See Doggett*, 505 U.S. at 657; *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992). In the case of *Beamon*, the Ninth Circuit held that 17 and 20 month delays caused by government negligence were not excessive. *Beamon*, 992 F.2d at 1014. Since the delay in Monroe's case was at most 20 months, and 14 months as stipulated, the Court does not view it as a delay that can be described as "excessive." Thus, in this case, prejudice may not be presumed but must be proved and the reasons for the delay must also be viewed in counterbalance.

The Court of Appeal described the delay in prosecution as "understandable," and "neither purposeful nor reproachable." Monroe claims the Court of Appeal was unreasonable in its evaluation of the facts. (Traverse at 8.) To illustrate his point, Monroe highlights the court's statement that, "[n]ot until February 20, 2002 *shortly after* the mobile home owner inquired about the recovery of his .380 semiautomatic, did the district attorney's office file a hold against Monroe at state prison." (*Id.*) (Emphasis added.) Monroe claims the evidence, to the contrary, was that the owner inquired about the gun and prosecution periodically for two years. (Traverse at 9.) A review of the transcript reflects that on December 12, 2000, shortly after the burglary, Harvey Collison, the owner of the property received a call from Senior Deputy Nobles to say Collison's gun had been recovered, (lodgment 18, vol. 2 at 330), but that it would be kept in Los Angeles "for some period of time, appeal periods or something like that, it was evidence in another case." (Lodgment 18, vol. 1 at 172.) In March or April of 2001 Nobles transferred out of the substation in Inyokern, the rural community in which the crime occurred. (*Id.* at 331.) On September 14, 2001, he was sent to Afghanistan on active duty. (Lodgment No. 20 at 31.) Collison testified that he would periodically go to the sheriff's substation and inquire after his gun but that it was not until 2002 when Deputy Thatcher called him about the case that he finally retrieved his gun, made it clear that he wanted to prosecute, and the case began moving again. (Lodgment No. 18, vol. 1 at 172-173.) At the speedy trial hearing, the prosecutor conceded, "We don't have any good explanation for why [the delay in trial] occurred,. . .." (Lodgment No. 20 at 18.) Defense counsel stated, "I don't know that there was any intention on the part of the district attorney to see if the boots, somehow, became unavailable to the defense, but I suspect what was going on was

something akin to deliberate indifference, we simply don't care to proceed, they have him down in Los Angeles, a serious case down there, a car-jacking case, and just kind of, in a way, deliberately ignored the thing. . .." (*Id.* at 33.)

Based on this record, the Court can find only negligent, not deliberate, delay on the government's part. There is no suggestion, nor logical motivation, found in the record to support Monroe's allegation that the government purposely delayed the prosecution in bad faith without hope of obtaining a valid conviction or with a view to hampering the defense. *See Barker,* 407 U.S. at 531 (deliberate attempt to delay for purpose of hampering defense weighed heavily against government); *Carden v. State of Mont.*, 626 F.2d 82, 84 (9th Cir. 1980) (bad faith by state officials shown in pursuing prosecutions without hope of obtaining valid conviction). The government had nothing to gain from waiting since it already had evidence firmly placing Monroe at the scene of the crime. *See Murillo*, 288 F.3d at 1131 (no deliberate delay where record is devoid of direct or circumstantial evidence that government sought any tactical advantage). Indeed, when the Court considers the prejudice prong in the balance, Monroe's argument falls decisively short of being meritorious. Monroe must prove he suffered actual prejudice, because there is no evidence of deliberate delay. See *Barker,* 407 U.S. at 531. Such prejudice is the following: 1) oppressive pretrial incarceration; 2) anxiety and concern of the accused; and 3) impairment of the defense due to loss of evidence. *Doggett*, 505 U.S. at 654. The last of these factors is the most serious. *Id*.

During the time of delay in question, Monroe was incarcerated pursuant to his L.A. County carjacking conviction. He thus did not suffer any oppressive pretrial incarceration based on the burglary charge. Further, because he had short notice that he was to be prosecuted on this charge, he had little chance to spend time anxious and concerned. Monroe does not take issue with these two first factors; his focus is on the loss of evidence. Specifically he claims he would have taken steps to preserve the boots he was wearing when he was apprehended to show that the footprints from those boots did not match the footprints found in the trailer.

Monroe's argument is not convincing. The police found fingerprints inside the trailer belonging to Monroe. Two experts, including a supervisor who had been performing fingerprint analysis for 28 years, testified they were positive the fingerprints from the trailer matched Monroe's fingerprints.

(Lodgments No. 18, vol. 2 at 216 and 283.) Although Monroe rigorously cross-examined the experts, he did not present an expert of his own contradicting the government's witnesses. Moreover, the gun that was taken from the trailer was in Monroe's possession a few days later during the carjacking. Therefore, although Monroe claims the boots he was wearing would not have matched the boot prints at the scene, this would not have removed him from the scene or countered the strong inference of guilt from the fingerprint and possession of gun evidence. Monroe has failed to show he suffered actual prejudice.

In conclusion, Monroe was not denied his constitutional right to speedy trial because the negligent delay in prosecution was not excessive and did not cause actual prejudice to the outcome of the trial. The state court decision was not contrary to or an unreasonable application of clearly established federal law. *Williams*, 529 U.S. at 412-13. Monroe's claim is **DENIED**.

## VI. THIRD-PARTY CULPABILITY EVIDENCE

Prior to trial, the court granted the state's motion in limine to exclude evidence of three other uncharged residential burglaries that also took place in Inyokern within days of Monroe's charged burglary. (Lodgment No. 18, vol. 1 at 12.) Monroe argues this evidence would have shown that someone other than him committed the burglary for which he was charged because: (1) the same bootprints were at both the Collison burglary and one of the other burglary sites; (2) the burglaries occurred in the same small town at around the same time; and (3) Monroe did not fit the eyewitness description of the perpetrator of the other burglary. (Traverse at 21.)

The last reasoned state court decision on this claim was issued on Monroe's first appeal, by the Court of Appeal. (Lodgment No. 4 at 5-6.) In rejecting Monroe's claim, the court held that the evidentiary ruling by the trial court demonstrated a proper exercise of discretion without violating Monroe's federal constitutional rights to due process or a fair trial. (*Id*.) The court stated, "The record of the hearing on the motion [in limine] shows the [trial] court appreciated the magnitude of the fingerprint evidence and the .380 automatic that implicated [Monroe] in the charged burglary but nevertheless respected the independent criteria for the admission of evidence of third party culpability." (*Id*.)

According to clearly established federal law, state evidentiary rulings are not cognizable in

federal habeas proceedings unless the trial court's ruling violated the petitioner's due process right to a fair trial. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("federal habeas relief does not lie for errors of state law," unless there is a violation of petitioner's constitutional rights). To establish a due process violation, Monroe must show that the trial court's ruling was so prejudicial that it rendered his trial fundamentally unfair. *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th Cir. 1996).

In *People v. Hall*, 41 Cal.3d 826, 829 (1986), the California Supreme Court clarified the *Mendez-Arline* exclusionary rule applicable to evidence of third party culpability. *See People v. Mendez*, 193 Cal. 39 (1924), overruled on other grounds; *People v. Airline*, 13 Cal.App.3d 200 (1970). The court held that "any relevant evidence that raises a reasonable doubt as to a defendant's guilt, including evidence tending to show that a party other than the defendant committed the offense charged" is admissible. *Hall,* 41 Cal.3d at 829. "[T]he third party evidence need not show 'substantial proof of a probability' that the third person committed the act" but the evidence must not be too remote and "there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." *Id.* at 833. A trial court must first inquire whether the evidence could raise a reasonable doubt as to defendant's guilt and then apply the balancing test of California Evidence Code section 352.[2] *Id.*

Referencing *Hall*, among other cases, the United States Supreme Court has upheld state rules limiting admission of third party culpability evidence to instances where such evidence raises a reasonable doubt about the defendant's guilt. *Holmes v. South Carolina*, 547 U.S. 319, 327 (2006). However, such rules must ensure a court focuses on excluding only evidence that has a very weak logical connection to the central issues, and in doing so, evaluates the strength of both parties' evidence. *Id.* at 330-31. In this way, a defendant will be assured his constitutional right to a meaningful opportunity to present a defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted in the Due Process Clause of the Fourteenth Amendment [] or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, [] the Constitution guarantees criminal

---

[2] "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

defendants a meaningful opportunity to present a complete defense.") (internal quotations and citations omitted).  Similarly, the Ninth Circuit has stated that evaluating the constitutionality of excluding defense evidence, a court must consider "all of the circumstances: its probative value on the central issue, its reliability, whether it is capable of evaluation by the finder of fact, whether it is the sole evidence on the issue or merely cumulative, and whether it constitutes a major part of the attempted defense."  *Perry v. Rushen*, 713 F.2d 1447, 1452-53 (1983) (third-party culpability evidence too collateral to admit when third party would not be identified as person who committed actual crime charged but as person identified as committing similar crimes in the same area and resembling defendant).  A court must also give due weight to preserving orderly trials, judicial efficiency, and exclusion of unreliable or prejudicial evidence.  *Id.* at  1253.

Monroe's proffer of evidence did not single out a third party individual by name but outlined a description by eyewitnesses of a man that did not fit Monroe's description. (Lodgment No. 18, vol. 1 at 16.)  During the in limine hearing, Monroe focused his attention on the specifics of one (gas can burglary) of the three other burglaries in the area which was the closest in time (within an hour) and distance to the charged (Collison) burglary in this case.  (*Id*. at 15-16.)  Although Monroe stated the bootprints at the gas can burglary were the same as those found at the scene of the Collison burglary, the state argued the results were inconclusive on that issue because the print at the gas can burglary was very vague.  (*Id.* at 26.)  The state further proffered that their expert would testify bootprints found at two of the other three burglaries were clearly different than those at the Collison burglary.  (*Id.* at 17-18.)  Nonetheless, Monroe maintains that if he introduced evidence of the other bootprints, burglaries and the eyewitness identification evidence he would have been able to argue that it was the person committing these other burglaries, who also carried out the Collison burglary.

None of the third party culpability evidence would have lessened the weight of the fingerprint evidence.  The fingerprints coupled with Monroe's possession of the stolen weapon a few days after the burglary placed Monroe at the scene of the crime.  The third party culpability evidence in the form of inconclusively similar footprints and  vague eyewitness descriptions of an alternate burglar would have no material or probative value in removing Monroe from the scene, or placing the individual who committed the other crimes at the scene.  It would have been judicially inefficient to transport and hear

1  the testimony of a possible 14 witnesses (lodgment 18, vol. 1 at 13) from rural Kern County to the
2  courthouse to testify about such collateral evidence.

3  In conclusion, the Court finds Monroe was not deprived of an opportunity to present a
4  meaningful defense by exclusion of third party culpability evidence because such evidence was not
5  sufficiently probative of innocence, and would not have raised a reasonable doubt as to Monroe's guilt.
6  Thus, the probative nature of the evidence was not outweighed by other considerations the court had
7  discretion to consider under section 352. Monroe's trial was not fundamentally unfair. The state court
8  decision was not contrary to or an unreasonable application of clearly established law. *Williams*, 529
9  U.S. at 412-13. Monroe's claim is **DENIED**.

## VII.     PRIOR STRIKE

Monroe argues that the trial court's use of his prior Pennsylvania burglary conviction as a strike, to enhance his sentence, violated his constitutional rights to a jury trial and to due process. (Pet. at 8.) He contends it was improper for the sentencing judge to look beyond the least adjudicated elements of the prior burglary in determining it qualified as a "residential" burglary under California law. (Pet. at 6; Traverse at 23-29.) Respondent argues the court had discretion to examine the entire record of conviction to establish facts necessary to determine whether the prior conduct qualified as a burglary in California. (Respt.'s Mem. at 19-23.)

The last reasoned state court decision regarding this claim was issued following Monroe's second appeal. *Ylst*, 501 U.S. at 801-06 (where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision). The Court of Appeal stated the following:

> In our prior opinion in this case, we concluded that one of Monroe's Pennsylvania burglary priors qualified as a serious felony prior and a strike prior. In so concluding, we noted that for an out-of-state prior to so qualify, a court can consider not only the elements of the out-of-state crime, but also the entire record of the out-of-state conviction, citing *People v. Avery* (2002) 27 Cal.4th 49, 53, *People v. Myers* (1993) 5 Cal.4th 1193, 1201-1202, and *People v. Guerrero* (1988) 44 Cal.3d 343, 345 (*Guerrero*). We explained that in California, first degree burglary, which qualifies as a serious felony and strike, requires entry into an inhabited dwelling house (§§ 459, 460, subd. (a), 667, subds. (a), (d)(1), (d)(2), 1170.12, subd. (b)(1), (b)(2), 1192.7, subd. (c)(18)), while first degree burglary under Pennsylvania law does not require entry into an inhabited enclosure. (18 Pa.C.S.A. §§ 3502,

> subds. (a), (c).) Since the elements of the two crimes are not identical, we looked to the entire record of the Pennsylvania conviction to resolve the issue, and concluded that since the Pennsylvania complaint charged Monroe with forcible entry into a home and Monroe was convicted based on a plea bargain, the residential character of the crime was established and the conviction qualifies as a serious felony and strike prior.

(Lodgment No. 10 at 9.)

Monroe does not dispute that the complaint from his Pennsylvania burglary contains an allegation that he entered a home.[3] He contends it was unconstitutional for the court to look at the complaint and use the facts alleged therein to enhance his sentence. ( Pet. at 6-6a; Traverse at 23-29.) Monroe argues the new case of *Shepard v. United States*, 544 U.S. 13 (2005) has limited consideration of the facts of a prior conviction to the least adjudicated elements rather than the entire record of conviction because of Sixth Amendment concerns articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (facts used to increase sentence beyond statutory maximum must be found by jury not judge to satisfy entitlement to jury trial contained in Sixth Amendment). (Pet. at 6a; Traverse at 26-29.) The Court does not agree that the holding or dictum in *Shepard* applies to the case at hand, as explained below.

Under California's Three Strikes law, a prior conviction for first degree burglary qualifies as a strike. *See* CAL. PEN. CODE §§ 667(b)-(I); 1192.7(c). A defendant's sentence may be enhanced based on the finding of a prior strike. *People v. Woodell*, 17 Cal.4th 448, 450 (1998). "Determining whether a prior conviction qualifies as a strike under the Three Strikes law is [] the type of inquiry that judges traditionally perform as a part of the sentencing function." *People v. Kelii*, 9 Cal.4th 452, 454 (1999). If a prior conviction is from a foreign jurisdiction, to qualify as a strike it must have involved the same *conduct* that would qualify as a strike in California. *Id.* at 453. As the Court of Appeal noted in its opinion in this case, the Pennsylvania burglary statute does not require the element of "inhabited

---

[3] Lodgment 15 at page 59 shows the Pennsylvania complaint which states, "[Defendant] did forcibly enter the home of Albert Russell Schaible, knowing that he was not licensed or privileged to do so with the intent to commit a crime therein namely; Theft. . .." This is the felony prior arising from exhibit 25; in Monroe's previous appeal the Court of Appeal ordered stricken the two other felony priors/strikes "arising from the two burglary priors in People's Exhibits 23 and 24." (Lodgement No. 4 at 9.)

dwelling" whereas the California statute does have this requirement. *See* CAL. PEN. CODE §§ 459, 460(a), 667(a), (d)(1), (d)(2), 1170.12 (b)(1), (b)(2), 1192.7(c)(18) and 18 Pa.C.S.A. §§ 3502(a), (c). Thus, by simply looking at the least adjudicated elements or judgement of conviction of the prior Pennsylvania burglary, as opposed to the conduct upon which the conviction was based, the prior would not qualify as a strike in California.

In *People v. Guerrero*, 44 Cal.3d 343, 345 (1988), the California Supreme Court stated a trial court may look to the *entire record of conviction* to determine the *conduct* underlying the prior conviction. This does not mean the state may introduce new evidence outside the record of the prior proceedings but that it may submit such things as charging documents, abstracts of judgment, clerk's minutes, change of plea forms, transcripts of plea entry, and preliminary hearing transcripts. *People v. Moenius*, 60 Cal.App.4th 820, 825 (1998) (information allegations are included in record of conviction); Crim. Law Pro. and Practice, § 37.33B (3), p. 1127 (2008). In this case, the sentencing court reviewed the criminal complaint from the Pennsylvania burglary which stated that Monroe was accused of entering a "home" with the intent to commit a theft. (*See* fn.3.) The court also had access to the sentencing sheet from Pennsylvania reflecting Monroe entered a plea bargain with regard to this charge. (Lodgement No. 15 at 61.) Pursuant to *Guerrero*, the sentencing court had discretion to consider these parts of the Pennsylvania record to find Monroe's prior conviction qualified as a strike. Monroe believes *Shepard* has invalidated *Guerrero* because looking to the entire record violates *Apprendi* by allowing the judge to find facts supporting an increase in the sentence beyond the maximum.

In *Shepard* the Supreme Court had to decide whether under the federal Armed Career Criminal Act (ACCA), a sentencing court could look to facts contained in "police reports or complaint applications" to determine if a prior conviction qualified as a "generic burglary" that may lead to an increase of the maximum sentence under the statute. *Shepard*, 544 U.S. at 16. The Supreme Court rejected consideration of police reports and complaint applications, stating this would be "a wider evidentiary cast [], going beyond conclusive records made or used in adjudicating guilt and looking to documents submitted to lower courts even prior to charges." *Id.* at 21. In explaining its rejection, the Court cited *Apprendi* and its predecessor, *Jones v. United States*, 526 U.S. 227, 243, fn. 6 (1999), for

the concern that police reports and complaint applications contained "debatable" or "disputed facts" and making findings regarding such facts was part of a jury's function pursuant to Sixth and Fourteenth Amendment protections. *Shepard*, 544 U.S. at 25-26. The court described the determination of such prior facts as "too far removed from the conclusive significance of a prior judicial record" traditionally used to increase a sentence based on recidivism. *Id.* Therefore, the *Shepard* court limited inquiry of a prior conviction to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between the judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26.

In light of the above, *Shepard* does not invalidate *Guerrero* and the ability of sentencing judges to consider complaints filed in prior convictions to review the conduct upon which the conviction was based because: (1) "complaint applications" rejected in *Shepard*, are different than Pennsylvania "complaints" which fall within the definition of a "charging document;"[4] (2) *Shepard* did not overrule the case of *Almendarez-Torres v. United States*, 523 U.S. 224, 247-48 (1998), which allows sentencing courts to enhance sentences based on factual findings from the records of prior convictions; and (3) the *Shepard* court clearly stated, "[w]e are dealing with an issue of [federal] statutory interpretation," *Shepard*, 544 U.S. at 23, and only revisited *Apprendi* constitutional questions as part of dictum, *id.* at 24-26, *see also Bird v. Brown*, 2008 WL 793827 (N.D. Cal. Mar. 21, 2008) ("Shepard did not purport to resolve whether a trial court's consideration of certain records from a prior criminal proceeding violated the Sixth or Fourteenth Amendments, but instead concerned only whether a specific sentencing statute passed by Congress, the [] ACCA, allowed reference to such documents").

Moreover, it is worth noting that in *People v. McGee*, 38 Cal.4th 682, 691 (2006) the California Supreme Court had an opportunity to address the *Apprendi* argument Monroe raises here. That court

---

[4] In *Shepard*, the issue was whether police reports filed in a prior "complaint application" pursuant to Massachusetts Criminal Procedure, could be considered by a sentencing court. *Shepard* 544 U.S. at 16. In Massachusetts, complaint applications are filed only by police officers who have made an arrest without a warrant and seek a court's probable cause determination for issuance of a complaint by the district attorney. *District Attorney for Norfolk Dist. v. Quincy Div. Dist. Court Dept.*, 444 Mass. 176, 179 (2005); *see* 30 MAPRAC § 12.16 & 12.18 (prior to issuance of criminal complaint, police must attach report to application for complaint with court and clerk-magistrate must find probable cause for issuance of such complaint.)

1  highlighted the distinction between increasing a sentence based on a *prior conviction* as opposed to
2  increasing a sentence based on undetermined facts in the *current conviction* as was the case in *Apprendi*
3  (sentencing court found defendant's act was racially motivated, thus supporting a hate crime
4  enhancement). The *McGee* court stated that the need for a sentencing judge to look at the record of a
5  prior conviction "does not contemplate that the court will make an independent determination regarding
6  a disputed issue of fact relating to the defendant's prior conduct, [] but instead that the court simply will
7  examine the record of the prior proceeding to determine wether that record is sufficient to demonstrate
8  that the conviction is of the type that subjects the defendant to increased punishment under California
9  law." *Id.* at 706 (internal citations omitted). Indeed, the Supreme Court in *Apprendi* said of its
10 exception in *Almendarez-Torres,* which supports enhancement of sentence based on a judge's review
11 of a past conviction, that it "turned heavily on the fact that the additional sentence to which the
12 defendant was subject  was 'the prior commission of a serious crime.'" *Apprendi* at 488; 496
13 ("Whereas recidivism does not relate to the commission of the offense itself, [the hate crime inquiry]
14 goes precisely to what happened in the commission of the offense.") (internal citations and quotations
15 omitted). *Apprendi* also emphasized that the prior proceedings had provided "substantial procedural
16 safeguards of their own." *Id.* at 487-88; 496 ("[T]here is a vast difference between accepting the
17 validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right
18 to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and
19 allowing the judge to find the required fact under a lesser [preponderance of evidence] standard of
20 proof.")

21     In conclusion, the sentencing court's consideration of the complaint in Monroe's prior
22 Pennsylvania conviction, to determine whether the conduct involved qualified as a prior strike under
23 California law, did not violate Monroe's rights under the Sixth or Fourteenth Amendments. The state
24 court decision was not contrary to or an unreasonable application of clearly established federal law.
25 *Williams*, 529 U.S. at 412-13. Monroe's claim is **DENIED**.

26 **VIII.   INEFFECTIVE ASSISTANCE OF COUNSEL**

27     Monroe argues his trial counsel was ineffective in failing to request a jury instruction on the
28 state's responsibility for losing his boots as material and beneficial evidence. (Pet. at 6; Traverse at

29-31.)  Respondent contends trial counsel's representation was reasonable and non-prejudicial. (Resp.'s Mem. at 23-24.)

The last reasoned state court decision on this claim was issued by the Court of Appeal in Monroe's first appeal. (Lodgement No. 4.); *Ylst*, 501 U.S. at 801-06 (where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision). The court stated the following:

> The case against Monroe was not close.  He left two latent fingerprints inside the mobile home. The .380 semiautomatic from the mobile home was in his possession just days after the charged burglary. Even if his counsel had requested the instruction, and the court had given the instruction, on the government's responsibility for the loss of his boots, and even if the jury had inferred from that instruction that his boots did not leave the bootprint at the scene of the charged burglary, a guilty verdict nonetheless was likely, either on the theory that he wore other boots or on the theory that an accomplice left those bootprints.  [] Monroe's boots were peripheral to the jury's determination of his guilt. For want of the requisite showing of prejudice, we reject his ineffective assistance claim.

(Lodgement No. 4 at 7.)

To succeed in an ineffectiveness of counsel claim, a petitioner must show that his attorney's representation fell below an objective standard of reasonableness and that he was prejudiced by the alleged ineffectiveness. *Strickland v. Washington,* 466 U.S. 668, 688 (1984). Prejudice can be shown by demonstrating a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. If it is easier for a court to dispose of an ineffectiveness claim based on lack of prejudice without determining whether counsel's performance was deficient, that course should be followed. *Id.* at 697.

Having thoroughly examined the record in this case, the Court cannot agree with Monroe's description of the lost boots as "vital to [his] defense." (Traverse at 29.)  There is no "reasonable probability" that, had the instruction been given to the jury, it would have changed the result of the proceeding.  "Reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The boot instruction would not have diminished the impact of the most inculpatory evidence against Monroe, that is, that two experts testifying they were positive that the fingerprints found at the home were that of Monroe's, and that Monroe was found days later

in possession of the exact weapon that was stolen. Therefore, the Court finds Monroe's argument insufficient to undermine the validity of the jury's verdict.

The state court's decision was not contrary to or an unreasonable application of law and was not based on an unreasonable determination of the facts in light of the evidence presented. Monroe's claim is **DENIED**.

### IX.  CONCLUSION AND CERTIFICATE OF APPEALABILITY

For all the foregoing reasons, **IT IS HEREBY ORDERED** Monroe's Petition for Writ of Habeas Corpus is **DENIED** in its entirety, terminating this action.

A Certificate of Appealability ("COA") is required pursuant to 28 U.S.C. § 2253 before a petitioner can pursue an appeal. When a district court has rejected constitutional claims on the merits, a petitioner must make a "substantial showing of the denial of a constitutional right," requiring a demonstration that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" or that "the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart,* 220 F.3d 1022, 1025 (9th Cir. 2000), *quoting Slack v. McDaniel*, 529 U.S. 473, 484 and *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983) (internal quotation marks omitted). The standard for gaining permission to appeal does not require a showing that a petitioner should prevail on the merits. *Lambright*, 220 F.3d at 1025, *quoting Barefoot,* 463 U.S. at 893 n. 4.

The Court **GRANTS** Monroe a Certificate of Appealability with regard to his prior strike claim. A Certificate of Appealability as to all other claims is **DENIED**.

**IT IS SO ORDERED**.

DATED: December 10, 2009

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge